Michael Alan CROOKER,
Plaintiff, Appellant,

v.

UNITED STATES PAROLE COMMIS-
SION, Defendant, Appellee.

No. 83–1687.

United States Court of Appeals,
First Circuit.

Oct. 30, 1985.

Katherine A. Meyer and Alan B. Morrison, Attys., Public Citizen Litigation Group, Washington, D.C., on brief, for plaintiff, appellant.

Barbara L. Gordon and Janet C. Hudson, Attys., Civil Div., Dept. of Justice, and Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., and William F. Weld, U.S. Atty., Boston, Mass., on brief, for defendant, appellee.

Before ALDRICH, COFFIN, and BREYER, Circuit Judges.

### ON MOTION FOR ATTORNEYS' FEES AND COSTS

PER CURIAM.

Appellant Michael Crooker seeks an award of attorney's fees under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(4)(E), on the basis of this court's previous decisions that the United States Parole Commission must furnish him with copies of his presentence report, 760 F.2d 1 (1st Cir.1985), and with certain of his medical records, 730 F.2d 1 (1st Cir.1984). For reasons we discuss below, we conclude that appellant should be awarded $23,879.85 in costs and attorney's fees.

■ Congress first authorized attorney's fees in FOIA cases in 1974 amendments to the Act. The Senate Report accompanying the legislation explained that attorney's fees were thought necessary

"to effectuat[e] the original congressional intent that judicial review be available to reverse agency refusals to adhere strictly to the Act's mandates. Too often the barriers presented by court costs and attorneys' fees are insumountable [sic]

for the average person requesting information, allowing the government to escape compliance with the law." S.Rep. No. 854, 93d Cong., 2d Sess. 17 (1974) [hereinafter Senate Report].

Congress thus determined that plaintiffs who "substantially prevail" may be awarded attorney's fees under the FOIA. 5 U.S.C. § 552(a)(4)(E). In this case, the work performed by appellant's attorneys unquestionably led to the release of his presentence report and medical records, as well as to the Solicitor General's determination that presentence reports are "agency records" subject to the FOIA. We also find that this material would not have been released without the lawsuit. This is sufficient to establish that appellant "substantially prevailed". *Crooker v. United States Department of Justice*, 632 F.2d 916, 922 (1st Cir.1980); *Vermont Low Income Advocacy Council v. Usery*, 546 F.2d 509, 513 (2d Cir.1976).

■ Even if a plaintiff succeeds in obtaining the requested information, however, he is not automatically entitled to an award of attorney's fees. *See, e.g., Education/Instruccion v. U.S. Dep't of Housing*, 649 F.2d 4, 7 (1st Cir.1981); *Crooker v. U.S. Dep't of Justice*, 632 F.2d 916, 922 (1st Cir.1980); *Blue v. Bureau of Prisons*, 570 F.2d 529, 533 (5th Cir.1978).

"[A]ttorneys' fees under the FOIA [are] not to be awarded as a matter of course, as in civil rights cases; rather, a court [may use] the Senate's four criteria to circumscribe the conditions under which it would make such an award.... In short, the question of whether to award attorneys' fees is left to the sound discretion of the court". *Blue*, 570 F.2d at 533.

The Senate criteria referred to are those that had been included in the Senate version of what was to become § 552(a)(4)(E). The conference substitute eliminated the criteria from the statute, but the conference report on the bill indicates that Congress nevertheless intended courts to consider such factors in exercising their discretion on the issue of attorney's fees.

S.Conf.Rep. No. 1200, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 6267, 6285, 6288. *See Crooker v. United States Department of Justice*, 632 F.2d at 922; *Blue v. Bureau of Prisons*, 570 F.2d at 533; *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1364 (D.C.Cir.1977). These four factors, which we consider separately below, are: (1) the benefit to the public, if any, derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law. *Education/Instruccion*, 649 F.2d at 7; *Crooker v. United States Department of Justice*, 632 F.2d at 922. As we note *infra*, these are not airtight, independently indispensable prerequisites.

We note briefly at the outset of our discussion that appellant has failed to convince us that he should be awarded attorney's fees in connection with his request for medical records. Although he sought no commercial benefit from the disclosure, he has not persuaded us that there was sufficient public interest to justify such an award, particularly since we can not say the government had no reasonable basis in law for withholding the records. We thus confine our more detailed scrutiny to the issue of the presentence report.

### (1) *Benefit to the Public*

■ It is no doubt true that a successful FOIA plaintiff always acts in some degree for the benefit of the public, both by bringing the government into compliance with the language of the Act and by securing for society the benefits assumed to flow from the disclosure of government information. *See Cuneo v. Rumsfeld*, 553 F.2d at 1366. Appellant has done more than this. After his lawsuit, the government will no longer claim that presentence reports are exempt from the FOIA because they are court records not subject to the Act's disclosure requirements. There is a strong likelihood that this will improve the quality of parole decisionmaking by provid-

ing for increased disclosure of the reports. Despite the fact that a presentence report is *"the* vital document in parole release decisionmaking", *see Berry v. Department of Justice,* 733 F.2d 1343, 1351 n. 12 (9th Cir.1984) (emphasis in original), "factual errors in presentence reports are commonplace" and "[a]llegations of inaccurate decisionmaking due to these factual errors are widespread". 733 F.2d at 1355–56. Thus, the disclosure of such reports should benefit the public because it "may increase the accuracy of presentence reports, and improve the correctional decisionmaking process", 733 F.2d at 1356 (citations omitted).

We believe this is the proper approach to the public benefit query whether or not the government succeeds in exempting presentence reports on other grounds in other cases, and despite any dispute about whether increased disclosure of reports would reduce the completeness and candor of information contained in them, *see* 733 F.2d at 1355 (government's contention that disclosing presentence report will chill sources of information has been "disproved, both analytically and empirically"). Appellant obtained a result that is of potential benefit to many individuals on an issue of importance to society as a whole, i.e., the proper length of time to deprive an individual of personal liberty on account of criminal activities. We think this is the only result consistent with the Senate Report, which described the type of plaintiff that ordinarily fails to meet the first criterion as "a business [that] was using the FOIA to obtain data relating to a competitor or as a substitute for discovery in private litigation with the government". Senate Report at 19.

### (2) *Commercial Benefit to Complainant*

In discussing this criterion, the Senate Report indicated that a "court would usually allow recovery of fees where the complainant was indigent or a nonprofit public interest group versus [sic] but would not if it was a large corporate interest". Senate Report at 19. Certainly, in this case, appel-

lant was not serving his "commercial" interest; a prisoner has no conceivable commercial interest in seeking access to his presentence report. An award of attorney's fees in this case would only enhance Congress' goal that agency decisions against disclosure receive judicial review even when the individual claimant can not afford to pay the costs of such review.

### (3) *Nature of the Complainant's Interest in the Records Sought*

This criterion is closely related to the second one in that it also would not support an award of fees to a party who sought disclosure of information for commercial benefit. The Senate Report adds that an award under this criterion would also be inappropriate if the complainant's interest was of a frivolous nature. Senate Report at 19. In this case, appellant's interest was neither commercial nor frivolous; instead, his interest was to ensure that the Parole Commission relied on accurate information in making decisions affecting his liberty.

### (4) *Whether the Government's Withholding of the Documents had a Reasonable Basis in Law*

The question whether the government's withholding was reasonable is a confused one. During our first consideration, the Commission argued, and we held, that presentence reports were court records not subject to disclosure. At that juncture, neither the government nor appellant pointed out—nor did we independently discover—that some twenty months earlier the Advisory Committee note accompanying amended Rule 32 of the Federal Rules of Criminal Procedure had opined that "the Parole Commission [is] free to make provision for disclosure to inmates and their counsel". *See* 97 F.R.D. 265, 309. When certiorari was pending, the Solicitor General apparently became aware of the note and, although continuing to oppose certiorari, conceded that presentence reports must be viewed as agency records. Our judgment was accordingly vacated. On remand the government continued to oppose

disclosure in part on the basis of a theory advanced for the first time. We finally ordered disclosure.

Despite this history of a delayed change of position on the basis of long available data and an eleventh hour attempt to introduce a new theory supporting non-disclosure, the government reminds us that its original withholding was supportable in light of a then existing conflict among the circuits and that its reexamination of its position was done sua sponte and in good faith.

On this record we do not find the government's original withholding of such reports to have been unreasonable. At the same time, however, we do not believe that this factor, while obviously important, should deprive appellant of attorney's fees. One factor alone is not dispositive in considering requests for attorney's fees under the FOIA, *see* Senate Report at 19–20 and, *e.g., La Salle Extension University v. F.T.C.,* 627 F.2d 481, 484 (D.C.Cir.1980); *Nationwide Building Maintenance v. Sampson,* 559 F.2d 704, 714 (D.C.Cir.1977), and while the criteria are intended to provide guidance and direction for courts to use in determining awards of fees, Congress made clear that such criteria are not to be used as "airtight standards". Senate Report at 19. In the circumstances of this case, we conclude that this factor is not sufficient to deprive appellant of attorney's fees.

As for the amount of fees requested, we note that the end products of work done involved two opening briefs in our court, all of top quality, and a petition for certiorari and a brief in the Supreme Court, which were obviously persuasive. We also note that no adjustment above lodestar computations has been sought. The time claimed to have been spent in preparation of briefs is within reason. And while there were no references to hourly rates allowed for the various attorneys in prior specific cases, the hourly rates, too, are within reason.

Because we have found that appellant is not entitled to an award of attorney's fees for the work done to secure release of his medical records, we reduce the fees requested by an amount attributable to that issue, which we deem to be one tenth of each attorney's time. We find that a reduction of $2704.75 is appropriate. Furthermore, we agree with the government that nine hours for proofreading appellant's petition for a writ of certiorari is excessive. We allow one hour of lawyer's time for this task, and thus reduce the total time claimed by Ms. Meyer to 152 hours, a reduction of $1000.

*We therefore find that appellant is entitled to attorney's fees and costs in the amount of $23,754.85.*[1]

**1.** Our computation is as follows:

Total amount of fees claimed, including $696.25 for reply to appellee's
opposition to fee request .................................................$27,047.50

Costs.......................................................................412.00

Total Request .............................................................$27,459.60

Deduct:

8 hours of proofreading at $125 an hour .................................. $1000

1/10 of each attorney's time commitment because of work done on medical
records issue: ..........................................................$2704.75

Total Deduction: ........................................................ $3704.75

Total Costs and fees allowed: ...........................................$23,754.85